ZACHARY W. CARTER, ESQ.
Corporation Counsel of the City of New York
Attorney for Plaintiff the City of New York
100 Church Street, Room 20-093
New York, New York 10007
Of Counsel: Gerald E. Singleton, Esq. (GS-4750)
Office: (212) 356-2036
Fax: (212) 356-2038
Cell: (917) 734-7906
gsinglet@law.nyc.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

THE CITY OF NEW YORK,

Plaintiff,

v.

BLUE RAGE INC., d/b/a THE COP SHOP, and
SALVATORE PICCOLO and SUSAN PICCOLO,

Defendants.

------------------------------------------------------------------------ x

**COMPLAINT**

**17 CV**

Plaintiff demands trial by jury

**ECF CASE**

Plaintiff, the City of New York (the "City"), by its attorney, Zachary W. Carter, Corporation Counsel of the City of New York, for its Complaint against defendants Blue Rage Inc., d/b/a the Cop Shop, and Salvatore Piccolo and Susan Piccolo (collectively, "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.    This action is based upon Defendants' knowingly unlawful marketing, sale and distribution of infringing merchandise bearing trademarks associated with the New York City Police Department ("NYPD") and the Fire Department of the City of New York ("FDNY").

## PARTIES

2.      The City is a municipal corporation organized pursuant to the laws of the State of New York.

3.      Upon information and belief, defendant Blue Rage Inc., d/b/a The Cop Shop, is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 560 Broadway, Massapequa, New York 11758, which also transacts business through a website @ www.copshopny.com.

4.      Upon information and belief, defendant Salvatore Piccolo is a citizen and resident of the State of New York, County of Nassau.

5.      Upon information and belief, defendant Susan Piccolo is a citizen and resident of the State of New York, County of Nassau.

6.      Upon information and belief, defendant Salvatore Piccolo is the Chief Executive Officer of defendant Blue Rage Inc. and personally supervises and directs the infringing and tortious activities complained of herein.

7.      Upon information and belief, defendant Susan Piccolo is the Manager of the Cop Shop and personally supervises and directs the infringing and tortious activities complained of herein.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a), 1338(b) and 1367, and the doctrine of pendent jurisdiction.

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## THE NYPD TRADEMARKS

10.     The City owns all trademarks, logos, names, and insignia associated with the NYPD (collectively, the "NYPD Trademarks"), including the acronym NYPD (the "NYPD

Mark") and a design consisting of the terms POLICE DEPARTMENT CITY OF NEW YORK surrounding a shield design (the "NYPD Shield"), which appears as follows:



11.   The City, by and through the NYPD, has provided police and civil protection services since at least as early as 1845.

12.   The City, by and through the NYPD, has continuously used the NYPD Shield, since at least as early as July 1, 1971.

13.   Since at least as early as 1989, the City has used the NYPD Mark and the NYPD Shield on goods sold to the general public.

14.   The NYPD Trademarks have been prominently featured in print and broadcast media, in promotional activities, and on a wide variety of licensed goods that are distributed nationally and throughout the world.

15.   The NYPD Trademarks also have been prominently featured in numerous theatrical motion pictures and in a number of long running and highly successful television shows.

16.   As a result of the NYPD's exceptional reputation, and the media attention and other publicity the NYPD has received throughout the years, particularly after the events of September 11, 2001, the NYPD Trademarks have acquired tremendous goodwill and value, and are now recognized throughout the United States and the world as uniquely designating the NYPD.

17.    The distinctive NYPD Trademarks are famous and are widely recognized throughout the world.

18.    The City owns valid and subsisting federal trademark registrations for the NYPD Mark, the NYPD Shield, and various specialized NYPD units in a number of classes covering souvenir merchandise, all of which have been and continue to be in use in commerce, as follows:

**NYPD**    U.S. Registration No. 3014363, registered on November 15, 2005,

for Metal goods; namely, metal key chains, metal key rings, metal holiday ornaments in International Class 006; Electric and scientific apparatus; namely, thermometers not for medical use, mouse pads, decorative refrigerator magnets, children's video tapes, children's educational software, video tapes featuring public safety and health information in International Class 009; Jewelry; namely, lapel pins, costume jewelry, cuff links, pendants, tie clips, tie pins in International Class 014; Furniture and articles not otherwise classified; namely, plastic key chain tags, cushions, plastic figurines, picture frames in International Class 020; Housewares and glasses; namely, mugs, lunch boxes, thermal insulated containers for food or beverages, drinking glasses, commemorative plates, decorative plates and souvenir plates in International Class 021; Clothing; namely, caps, t-shirts and sweatshirts in International Class 025; and Toys and sporting goods; namely, toy model cars, stuffed toy animals, toy dolls and accessories therefor, articulated toy figurines, toy banks, Christmas tree ornaments in International Class 028;



U.S. Registration No. 3061459, registered on February 28, 2006, for Metal goods; namely, metal key chains, metal key rings, metal holiday ornaments in International Class 006; Electric and scientific apparatus; namely, thermometers not for medical use, mouse pads, decorative refrigerator magnets, children's video tapes, children's educational software, video tapes featuring public safety and health information in International Class 009; Jewelry; namely, lapel pins, costume jewelry, cuff links, pendants, tie clips, tie pins in International Class 014; Furniture and articles not otherwise classified; namely, plastic key chain tags, cushions, plastic figurines, picture frames in International Class 020; Housewares and glasses; namely, mugs, lunch boxes, thermal insulated containers for food or beverages, drinking glasses, commemorative plates, decorative plates and souvenir plates in International Class 021; Clothing; namely, caps, t-shirts and sweatshirts in International Class 025; and Toys and sporting goods; namely, toy model cars, stuffed toy animals, toy dolls and accessories therefor, articulated toy figurines, toy banks, Christmas tree ornaments in International Class 028;



U.S. Registration No. 3763645, registered on March 23, 2010, for Sweat shirts; T-shirts; Baseball caps in International Class 025;



U.S. Registration No. 3772010, registered on April 26, 2010, for Sweat shirts; T-shirts; Baseball caps in International Class 025;



U.S. Registration No. 3573246, registered on February 10, 2009, for Sweat shirts; T-shirts; Baseball caps in International Class 025;



U.S. Registration No. 3804638, registered on March 23, 2010, for Sweat shirts; T-shirts; Baseball caps in International Class 025;



U.S. Registration No. 3587833, registered on March 10, 2009, for Sweat shirts; T-shirts; Baseball caps in International Class 025;



U.S. Registration No. 3763644, registered on March 23, 2010, for Sweat shirts; T-shirts; Baseball caps in International Class 025; and



U.S. Registration No. 3573245, registered on February 10, 2009, for Sweat shirts; T-shirts; Baseball caps in International Class 025.

19.     The City also owns New York State trademark registrations for the NYPD Mark (Reg. No. R-29799, registered on October 16, 2001) and the NYPD Shield (Reg. No. R-29800, registered on October 16, 2001).

20.     The City also owns registrations for the NYPD Mark (Reg. No. 108018, registered on March 14, 2002) and the NYPD Shield (Reg. No. 108017, registered on March 14, 2002) in California.

21.     The City owns registrations of the NYPD Mark (Reg. No. TMA756989, registered on January 13, 2010) and the NYPD Shield (Reg. No. TMA758886, registered on February 5, 2010) in Canada.

22.     The City also owns registrations for the NYPD Mark (Reg. No. 3747326, registered on August 5, 2005; and Reg. No. 15382898, registered on September 27, 2016) and the NYPD Shield (Reg. No. 3743127, registered on August 12, 2005, and Reg. No. 15382881, registered on November 23, 2016) in the European Union.

23.     The City also owns a registration for the NYPD Mark (Reg. No. 4601279, registered on September 6, 2002) in Japan.

24.     The City also owns a registration for the NYPD Mark (Reg. No. 164267974, registered on April 27, 2016) in France.

25.    The City also owns applications for registration of the NYPD Mark (Serial No. 20355174, filed June 20, 2016) and for the NYPD Shield (Serial No. 20355173, filed April 27, 2016) in China.

26.    The City also owns applications for registration of the NYPD Mark (Serial Nos. 1813355 and 1813357, filed October 26, 2016) and the NYPD Shield (Serial Nos. 1813340 and 1813343, filed October 26, 2016) in Mexico.

## THE FDNY TRADEMARKS

27.    The City also owns all trademarks, logos, names and insignia associated with the FDNY (collectively, the "FDNY Trademarks"), including the acronym "FDNY" (the "FDNY Mark"), a distinctive shield design with the words FIRE DEPARTMENT CITY OF NEW YORK and the colors red, white and blue with a gold border and a stylized Maltese cross with flames inside over a stylized representation of the New York City skyline in the background (the "FDNY Shield"), a Maltese Cross design containing the letters "F.D.N.Y." (the "FDNY Maltese Cross"), and the number 343 ("the 343 Mark"), which is the number of members of the FDNY who died in the line of duty on September 11, 2001.

28.    The City began using the FDNY Mark shortly after the FDNY's formation as a professional fire department in 1865.

29.    The FDNY Shield was created in 1976 and was made a part of the official uniform shortly thereafter, appearing as follows:



30.   The City has used the FDNY Mark and the FDNY Shield to identify the FDNY and its services on goods sold to the general public since at least as early as 1989.

31.   The City began using the FDNY Maltese Cross in connection with the provision of fire prevention service in 1887 and it has been using the FDNY Maltese Cross to identify the FDNY and its services on goods sold to the public since at least as early as 2000.  The FDNY Maltese Cross design appears as follows:



32.   The 343 Mark has been used since September 1, 2001 to honor FDNY personnel that died in the line of duty and to allow others to demonstrate their respect for its members and allegiance to their sacrifice.  Use of the 343 Mark is carefully controlled in order not to tarnish the memory of fallen service members and other FDNY personnel.

33.   The FDNY Trademarks have been prominently featured in print and broadcast media, in promotional activities, and on a wide variety of licensed merchandise that is distributed nationally and throughout the world.

34.   The FDNY Trademarks also have been prominently featured in numerous theatrical motion pictures and television shows.

35.   As a result of the FDNY's exceptional reputation, and the media attention and other publicity the FDNY has received throughout the years, particularly after the events of September 11, 2001, the FDNY Trademarks have acquired tremendous goodwill and value, and are now recognized throughout the United States and the world as uniquely designating the FDNY.

36.    The distinctive FDNY Trademarks are famous and are widely recognized throughout the world.

37.    The City also owns valid and subsisting federal trademark registrations for the FDNY Trademarks in a number of classes covering souvenir merchandise, all of which have been and continue to be in use in commerce, as follows:

**FDNY**    U.S. Registration No. 2606740, registered on August 13, 2002, for clothing, namely, t-shirts, sweat shirts, hats, caps, baseball caps, jackets, shirts, head wear, warm up suits, and wind resistant jackets, pants and shirts in International Class 25; U.S. Registration No. 3026049, registered on December 13, 2005, for metal key chains, metal key rings, metal holiday ornaments in International Class 06; thermometers not for medical use, mouse pads, decorative refrigerator magnets, children's musical sound and video recordings, compact disc holders; children's educational software, video tapes featuring public safety and health information in International Class 09;. lapel pins, costume jewelry, cuff links, pendants, tie clips and tie pins in International Class 14; calendars, notepads, pens, pencils, pencil boxes, stickers, bumper stickers, decals, books, magazines and brochures featuring information on fire safety in International Class 16; all-purpose sports bags, umbrellas in International Class 18; plastic and foam key chains and key chain tags, cushions, plastic figurines and picture frames in International Class 20; mugs, lunch boxes, thermal insulated containers for food or beverage, drinking glasses, commemorative plates, decorative plates, souvenir plates and plastic coasters in International Class 21; blanket throws in International Class 24; cloth patches for clothing in International Class 26; and

toy model cars, toy fire helmets, stuffed toy animals, toy dolls and accessories therefore, articulated toy figurines, toy banks, Christmas tree ornaments, snow globes, toy vehicles, jigsaw puzzles and playing cards in International Class 28; d



U.S. Registration No. 3075308, registered on April 4, 2006, for metal key chains, metal key rings, metal holiday ornaments in International Class 06; thermometers not for medical use, mouse pads, decorative refrigerator magnets, children's musical sound and video recordings, compact disc holders; children's educational software, video tapes featuring public safety and health information in International Class 09; lapel pins, costume jewelry, cuff links, pendants, tie clips and tie pins in International Class 14; calendars, notepads, pens, pencils, pencil boxes, stickers, bumper stickers, decals; books, magazines and brochures featuring information on fire safety in International Class 16; all-purpose sports bags, umbrellas in International Class 18; plastic and foam key chains and key chain tags, cushions, plastic figurines and picture frames in International Class 20; mugs, lunch boxes, thermal insulated containers for food or beverage, drinking glasses, commemorative plates, decorative plates, souvenir plates and plastic coasters in International Class 21; clothing, namely t-shirts, tank tops, shirts, sweatshirts, sweatpants, hats, caps, baseball caps, jackets, vests, sweaters, aprons, neckties, bow ties, cummerbunds, scarves and boxer shorts in International Class 25; cloth patches for clothing in International Class 26; and toy model cars, toy fire helmets, stuffed toy animals, toy dolls and accessories

therefore, articulated toy figurines, toy banks, Christmas tree ornaments, snow globes, toy vehicles, jigsaw puzzles and playing cards in International Class 28;

U.S. Registration No. 3191341, registered on January 2, 2007, for Clothing, namely shirts, t-shirts, tank tops, sweatshirts, sweatpants, sweatsuits, pants, shorts, jackets, vests, coats, rainwear, pullovers, sweaters, aprons, neckties, boxer shorts, scarves, hats and caps in International Class 25; and U.S. Registration No. 365913, registered on July 14, 2009, for Jewelry, namely, lapel pins, costume jewelry, cuff links, and pendants in International Class 14; Toys and sporting goods, namely, toy model cars, stuffed toy animals, toy dolls and accessories, articulated toy figurines, toy banks and Christmas tree ornaments in International Class 28; and U.S. Registration No. 3868734, registered on October 26, 2010, for Jewelry, namely, lapel pins, costume jewelry, cuff links, pendants, rings, charms, mini-badges of precious metal, watches, tie clips and tie pins in International Class 14; and Clothing, namely, t-shirts, tank tops, shirts, sweatshirts, sweatpants, pants, coats, rainwear, pullovers, hats, caps, baseball caps, jackets, vests, sweaters, aprons, neckties, bow ties, cummerbunds, scarves and boxer shorts in International Class 25; and U.S. Registration No. 4276053, registered on January 15, 2013, for Toys and sporting goods, namely, toy model cars, toy fire helmets, snow globes, toy vehicles, jigsaw puzzles, playing cards, stuffed toy animals, toy dolls and accessories therefor, Christmas tree ornaments in International Class 28; and

**343**        U.S. Registration No. 4750726, registered on June 9, 2015, for Decals in International Class 16; U.S. Registration No. 4754475, registered on June16, 2015, for Jewelry, lapel pins, in International Class 14; and U.S. Registration No. 5184325, registered on April 18, 2017, for t-shirts and hats, in International Class 25.

38. The City also owns trademark registrations for the FDNY Mark (Reg. No. R-31969, registered on December 12, 2001) and the FDNY Shield (Reg. No. R-31970, registered on December 12, 2001) in the State of New York.

39. The City also owns trademark registrations for the FDNY Mark (Reg. No. 2589596, registered on February 22, 2002, and Reg. No. 15376361, registered on November 23, 2016) and the FDNY Shield (Reg. Nos. 2589588, registered on February 22, 2002, and 15382856, registered on November 23, 2016) in the European Union.

40. The City also owns trademark registrations for the FDNY Mark (Reg. No. 641237, registered on June 2, 2010) and the FDNY Shield (Reg. No. 641155, registered on June 2, 2005) in Canada.

41. The City also owns an application for registration of the FDNY Mark (Serial No. 20355172, filed June 20, 2016) and the FDNY Shield (Serial No. 20355171, filed June 20, 2016) in China.

42. The City also owns applications for registration of the FDNY Mark (Serial Nos. 1813361 and 1813359, filed October 26, 2016) and the FDNY Shield (Serial Nos. 1813333 and 1813335, filed October 26, 2016) in Mexico.

**Officially Licensed Souvenir Merchandise**

43. The City operates and maintains an extensive merchandise licensing program, administered by the NYC & Company as the exclusive agent for the licensing of all of the City's various trademarks, pursuant to which a wide variety of officially licensed souvenir merchandise bearing the City's trademarks, including the NYPD and FDNY Trademarks, is sold to the general public.

44. Officially licensed merchandise generally bears a hologram, hangtag, label and/or packaging identifying the NYPD and FDNY Trademarks as trademarks that are owned by the City.

### Defendants' Unlawful Use of the NYPD and FDNY Trademarks

45. Defendants, through both its retail shop at 560 Broadway, Massapequa, New York 11758, and its online website @ www.copshopny.com, are marketing, selling and distributing a wide variety of unlicensed, infringing merchandise bearing the NYPD and FDNY Trademarks.

46. Upon information and belief, Defendants possess and are manufacturing and selling these infringing and/or counterfeit products in interstate commerce to members of the general public.

47. Defendants further are unlawfully using the NYPD Shield and the FDNY Shield on business cards and on the store signage of the retail shop.

48. Defendants have failed to comply with plaintiff's demands to cease and desist from engaging in such infringing activity.

49. On February 22, 2014, defendants displayed and sold unlicensed plush toys bearing the FDNY Trademarks as a vendor at the Long Island Fire, Rescue & EMS Mega Show at the Nassau Coliseum.

50.   On March 4, 2014, the City sent a letter to defendants, a copy of which is annexed hereto as Exhibit A, demanding that defendants immediately cease and desist from selling unlicensed and unauthorized merchandise bearing the NYPD and FDNY Trademarks.

51.   On or about December 11, 2014, the City sent a follow-up letter, with a copy of the March 4, 2014 letter, stating in relevant part that a civil action for trademark infringement would be filed against defendants if they continued to sell unlicensed merchandise bearing the NYPD and FDNY Trademarks.

52.   In a telephone call that took place on or about December 22, 2014, defendant Susan Piccolo told the City's attorney that the infringing items referenced in the March 4, 2014 letter had been donated to the Nassau County Lyons Club and that the Cop Shop was no longer in possession of any unlicensed merchandise bearing the NYPD and FDNY Trademarks.

53.   In a follow-up telephone call that took place on or about January 30, 2015, defendant Salvatore Piccolo told the City's attorney that the Cop Shop was no longer selling any unlicensed merchandise bearing the NYPD and FDNY Trademarks.

54.   On June 15, 2016, private investigators employed by the City's licensing agent NYC & Company visited the Cop Shop and made purchases of a number of unlicensed items bearing the FDNY and NYPD Trademarks.

55.   Defendants have posted a sign within the store which states:

> Some of the Various NYPD
> and FDNY products Sold in
> this store. Are sold as
> decoration and not a brand.
> Thank You
> Blue Rage Inc (The Cop Shop)

56.   On May 15, 2017, a representative of NYC & Company visited the Cop Shop and observed that defendants were displaying and selling numerous unlicensed items bearing the

NYPD and FDNY Trademarks, including caps, sweatshirts, t-shirts, fleece jackets, polo shirts, apparel for dogs, mugs, and challenge coins.

57.     On or about May 18, 2017, a representative of NYC & Company made online purchases of unlicensed items bearing the NYPD and FDNY Trademarks, including an NYPD pink ribbon uniform patch, a sweatshirt and a t-shirt from the www.copshopny.com website maintained by defendants.

58.     The City is suffering, and will continue to suffer, irreparable injury unless Defendants are enjoined from continuing to sell merchandise that infringes on the NYPD and FDNY Trademarks.

## COUNT I
### (Trademark Infringement with Respect to the NYPD and FDNY Trademarks)

59.     The City repeats and re-alleges the allegations of Paragraphs 1 through 58 as though fully set forth herein.

60.     The City owns valid and subsisting federal registrations for the NYPD and FDNY Trademarks, which have been and continue to be used in commerce.

61.     Defendants are selling infringing merchandise bearing the NYPD and FDNY Trademarks without the permission or consent of the City.

62.     Defendants' sale of infringing merchandise bearing the NYPD and FDNY Trademarks in interstate commerce without the approval of the City constitutes trademark infringement actionable under Section 32 (1) (a) of the Lanham Act, 15 U.S.C. § 1114 (1)(a).

63.     Defendants have acted willfully and purposely with the intention of misleading the public into believing that their infringing products may be lawfully sold to the public.

64.     If the sale of infringing merchandise bearing the NYPD and FDNY Trademarks by Defendants is not enjoined by this Court: (a) the public will be confused, misled and deceived

as to the source and origin of Defendants' products and will mistakenly assume that Defendants' infringing merchandise is authorized, sponsored, approved or produced by or for the City or its agencies, or that Defendants are affiliated with the City or its agencies; (b) consumers will be misled into purchasing unauthorized products, causing dilution and irreparable damage to the distinctive value and reputation of the NYPD and FDNY Trademarks and the City's licensing program; (c) Defendants will be unjustly enriched by their misappropriation of the substantial goodwill of the NYPD and FDNY Trademarks.

65.    The City has no adequate remedy at law.

66.    By reason of the foregoing, the City has been injured in an amount not yet ascertained and is entitled to the remedies provided for in 15 U.S.C. §§ 1114 et seq., including injunctive relief.

### COUNT II
### (False Designation of Origin in Violation of 15 U.S.C. § 1125(a))

67.    The City repeats and re-alleges the allegations of Paragraphs 1 through 66 as though fully set forth herein.

68.    Defendants' use of the NYPD and FDNY Trademarks in interstate commerce in connection with the marketing, distribution and sale of infringing merchandise that is not approved by the City for sale to the general public constitutes a false designation of origin and/or a false description or representation, including words or symbols tending falsely to describe or represent the same, actionable under Sections 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69.    Defendants have acted willfully and purposely with the intention of misleading the public into believing that their products originate with the City, are licensed by the City, or are in some way sanctioned by or affiliated with the City or its agencies.

70.    By reason of the foregoing, the City has been injured in an amount not yet ascertained and is entitled to the remedies provided for in 15 U.S.C. §§ 1114 et seq., including injunctive relief and damages.

## COUNT III
### (Trademark Dilution in Violation of 15 U.S.C. § 1125(c))

71.    The City repeats and re-alleges the allegations of Paragraphs 1 through 70 as though fully set forth herein.

72.    The City's NYPD and FDNY Trademarks are inherently distinctive and famous, and through many years of use by the City have come to represent, worldwide, the highest standards of quality and character unique to the NYPD and FDNY.

73.    Defendants' use of imitations of the famous and distinctive NYPD and FDNY Trademarks constitutes a commercial use in commerce of a mark or trade name, which has caused and will continue to cause irreparable dilution of the distinctive quality of the City's NYPD and FDNY Trademarks.

74.    Defendants have willfully intended to trade on the City's reputation and/or the reputation of the NYPD and FDNY and to cause dilution of the City's famous and distinctive NYPD and FDNY Trademarks in violation of 15 U.S.C. § 1125(c).

75.    By reason of the foregoing, the City is entitled to damages and injunctive relief.

## COUNT IV
### (Common Law Unfair Competition)

76.    The City repeats and re-alleges the allegations of Paragraphs 1 through 75 as though fully set forth herein.

77.    Defendants' unauthorized and infringing use of the City's NYPD and FDNY Trademarks constitutes misappropriation and infringement of such trademarks, actionable under the law of unfair competition.

78.     By reason of the foregoing, the City has been injured in an amount not yet ascertained.

## COUNT V
### (Trademark Infringement in Violation of General Business Law § 360-k)

79.     The City repeats and re-alleges the allegations of Paragraphs 1 through 78 as though fully set forth herein.

80.     The City owns valid and subsisting New York State trademark registrations for the NYPD Mark, the NYPD Shield, the FDNY Mark and the FDNY Shield.

81.     Defendants' unauthorized use of such trademarks in New York State without the City's consent, for the purpose of selling infringing merchandise not approved by the City for sale to the general public, has caused and continues to cause confusion, mistake and deception in the minds of the public.

82.     By selling infringing merchandise bearing such NYPD and FDNY Trademarks, Defendants have infringed the NYPD and FDNY Trademarks registered under New York state law, and has willfully violated Section 360-k of the New York General Business Law.

83.     Defendants' misappropriation and infringement of the City's NYPD and FDNY Trademarks in New York State was willfully committed with the intent to cause confusion or mistake or deception among the consuming public.

84.     By reason of the foregoing, the City has been injured in an amount not yet ascertained and is entitled to the remedies provided for in New York General Business Law §§ 360-k, 360-l and 360-m.

## COUNT VI
### (Deceptive Trade Practices and False Advertising
### In Violation of New York General Business Law
### Sections 349, 350 and 350-e)

85.    The City repeats and re-alleges the allegations of Paragraphs 1 through 84 as though fully set forth herein.

86.    Defendants' misappropriation and infringement of the City's NYPD and FDNY Trademarks represent a deliberate attempt to mislead consumers into believing that their infringing merchandise is authorized, sponsored, or otherwise affiliated with the City.

87.    By engaging in such false and misleading marketing of its products, Defendants have engaged in deceptive acts or practices in violation of New York General Business Law § 349 and false advertising in violation of New York General Business Law §§ 350 and 350-e.

88.    Such violations have resulted, upon information and belief, in profits to Defendants and have substantially harmed the City by depriving it of revenue to which it is entitled as a result of Defendants' unauthorized association of their merchandise with the NYPD and FDNY.

89.    By reason of the foregoing, the City is entitled to the remedies provided for in New York General Business Law §§ 349, 350 and 350-e.

**WHEREFORE,** the City prays that this Court:

A. Declare that Defendants, by the acts complained of herein, have infringed the City's NYPD and FDNY Trademarks and have competed unfairly with the City and its licensees, and that the acts complained of herein will damage and diminish the distinctiveness of the NYPD and FDNY Trademarks unless enjoined by this Court;

-20-

B.  Order that Defendants, and all other persons acting in concert or participation with them, be permanently enjoined from further acts of trademark infringement, dilution, or unfair competition, and particularly from, in any manner, directly or indirectly:

(a) using or otherwise infringing the City's NYPD and FDNY Trademarks;

(b) using any mark or indicia that incorporates any of the NYPD and FDNY Trademarks;

(c) manufacturing, distributing, circulating, selling, marketing, moving or otherwise disposing of merchandise bearing any simulation, reproduction, counterfeit, copy, colorable imitation or confusingly similar imitation of the NYPD and FDNY Trademarks, or marketing, advertising or displaying their goods in any way that tends to deceive, mislead or confuse the public into believing that Defendants' merchandise is in any way sanctioned by or affiliated with the City or its agencies;

(d) using any false designation of origin or false description (including, without limitation, any letters or symbols) which can, or is likely to, lead the trade or public to believe that any product manufactured, advertised, distributed and/or sold by Defendants is in any manner associated or connected with the City, or is sold, licensed, sponsored, approved or authorized by the City;

(e) otherwise competing unfairly with the City, its agencies, or its authorized licensees;

(f) diluting the distinctive quality of the NYPD and FDNY Trademarks; and

(g) assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

C. Order that Defendants be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations of, the NYPD and FDNY Trademarks, as well as all manufacturing plates, screens, molds, matrices, or other equipment used to reproduce patches bearing the NYPD and FDNY Trademarks.

D. Order that Defendants be required to account for and pay over to the City all gains, profits and advantages realized from the sale of counterfeit and infringing merchandise;

E. Order that Defendants be directed to file with this Court and serve on Plaintiff within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which the Defendants have complied with the injunction;

F. Enter judgment against Defendants for damages, in an amount to be determined, that Plaintiff has sustained as a consequence of Defendants' acts of trademark infringement, unfair competition, deceptive and unfair practices and trademark dilution, including trebled damages pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, and, if the City so elects, statutory

damages for its willful infringement of the NYPD and FDNY Trademarks under 15 U.S.C. § 1117; plus Plaintiff's costs, expenses and reasonable attorney fees in connection with this action as provided in 15 U.S.C. § 1117; and

G.  Such other, further and different relief as this Court deems just and proper.

## JURY DEMAND

The City demands a jury trial of all issues triable by a jury.

Dated:      New York, New York
            June 9, 2017

ZACHARY W. CARTER
Corporation Counsel of the
    City of New York
*Attorney for Plaintiff*
100 Church Street, Room 20-093
New York, New York 10007
(212) 356-2036

By: _____
    Gerald E. Singleton (GS-4750)