UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THE CITY OF NEW YORK,

                                Plaintiff,

     -against-

BLUE RAGE, INC. d/b/a The Cop Shop,
SALVATORE PICCOLO and SUSAN PICCOLO,

                                Defendants.
----------------------------------------------------------------X

**For Online Publication Only**

**MEMORANDUM & ORDER**
17-CV-3480 (JMA)(AYS)

FILED
CLERK

4:00 pm, Sep 30, 2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

APPEARANCES:

    James E. Johnson, Esq., Corporation Counsel of the City of New York
    Gerald E. Singleton, Esq. and Brian T. Horan, Esq., Of Counsel
    *Attorneys for Plaintiff*
    New York City Law Department
    100 Church Street
    New York, New York 10007

    Gerard F. Dunne, Esq.
    *Attorney for Defendants*
    Law Office of Gerard F. Dunne, P.C.
    41 Union Square West, Suite 1115
    New York, New York 10003

**AZRACK, United States District Judge:**

Plaintiff the City of New York ("Plaintiff" or the "City") commenced this action against defendants Blue Rage, Inc. d/b/a The Cop Shop ("Cop Shop"), Salvatore Piccolo ("Piccolo"), and Susan Piccolo (collectively "Defendants") alleging, inter alia, violations of the Lanham Act, 15 U.S.C. §1051, et seq., and of state law. Currently before the Court is the City's motion for summary judgment, its second such motion in this matter. See Motion, ECF No. 80. For the reasons set forth below, the motion is granted.

## I.  BACKGROUND

### A.  Prior Memorandum and Order

By Memorandum and Order dated January 27, 2020 (the "M&O"), District Judge Sandra J. Feuerstein[1] resolved cross-motions for summary judgment in this case, granting partial summary judgment to Plaintiff and denying Defendants' motion.  See City of New York v. Blue Rage, Inc., ("Blue Rage I"), 435 F. Supp. 3d 472 (E.D.N.Y. 2020).  Familiarity with the M&O and the factual history as set forth in that prior order is assumed and is repeated here to the extent necessary to provide context for the instant motion.  The following facts are taken from the M&O.

The City holds various trademarks registered with the United States Patent and Trademark Office including the abbreviation "NYPD" (the "NYPD Mark"), a design consisting of the words "POLICE DEPARTMENT CITY OF NEW YORK around a shield design (the "NYPD Shield," below), the abbreviation "FDNY" (the "FDNY Mark"), and a distinctive shield with the words FIRE DEPARTMENT CITY OF NEW YORK, the colors red, white, and blue, and a stylized Maltese cross with flames inside over a representation of the New York City skyline (the "FDNY Shield," below):

 

The City holds numerous federal trademark registrations for these marks in various classes of souvenir merchandise.[2]  The City operates an extensive merchandise licensing program

---

[1] This matter was reassigned to the undersigned on June 15, 2021.

[2] Although the City has also registered trademarks for other FDNY logos and for specialized NYPD units, it is seeking to recover damages related only to the NYPD Mark, NYPD Shield, FDNY Mark, and FDNY Shield.  See Declaration of Gerald E. Singleton, ¶ 2, ECF No. 81.

administered by an exclusive agent selling officially licensed souvenir merchandise with the NYPD and FDNY trademarks to the general public. Through the City's trademark licensing program, merchandise is sold in the United States, Europe, Australia, China, and Japan, and generates annual retail sales of tens of millions of dollars, the vast majority attributable to the sale of officially licensed NYPD and FDNY souvenir merchandise.

Defendant Salvatore Piccolo owns, and is the Chief Executive Officer of, defendant Blue Rage, which does business as the Cop Shop, and his wife, Defendant Susan Piccolo, is a manager at the store. The Cop Shop operates a retail store open to the public located at 560 Broadway, Massapequa, New York, and in addition, Defendants operate a website. Defendants do not dispute that in addition to selling licensed merchandise, they make and sell unlicensed merchandise bearing the NYPD and FDNY trademarks.

The City commenced this suit asserting six (6) causes of action against Defendants: Count I for trademark infringement under Section 32 (1)(a) of the Lanham Act, 15 U.S.C. § 1114 (1)(a); Count II for false designation of origin and/or false description or representation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); Count III for trademark dilution in violation of 15 U.S.C. § 1125(c); Count IV for common law unfair competition; Count V for trademark infringement in violation of New York General Business Law § 360-k; and Count VI for deceptive trade practices and false advertising under New York General Business Law §§ 349, 350, and 350-e. The City's first motion for summary judgment sought determination of the Lanham Act claims only.

As to the claims of trademark infringement and false designation of origin, the M&O analyzed those claims under a two-prong test to determine (1) whether the plaintiff's mark is entitled to protection and (2) whether use of the mark by the defendant is likely to cause consumer

confusion regarding the origin or sponsorship of the defendant's goods. Blue Rage I, 435 F. Supp. 3d at 485-86 (citing Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 102 (2d Cir. 2010)). While the registration of a mark entitles the owner to a presumption of validity, the presumption "may be overcome where a party has established trademark rights through prior use." Blue Rage I, 435 F. Supp. 3d at 486.

Defendants asserted, without contradiction from the City, that they had been "selling essentially the same products since 1995." Id. at 487. Based on the "first use in commerce" dates designated by the City in the trademark registrations, the Court determined that the NYPD Mark, NYPD Shield, and FDNY Shield were all used on clothing prior to 1995 and thus the City was the senior user as to those marks on that category of merchandise. Id. The Court further noted that "[t]he City's priority of use of these marks on clothing, however, does not automatically create trademark rights for their use on other classes of merchandise." Id.

As to the FDNY Mark on clothing and all the marks on the non-clothing categories of merchandise, the first "use in commerce" dates indicated on the registrations were all after 1995. Crediting Defendants' assertion regarding their sale of their products since 1995 and noting that this assertion "barely satisfies their burden of prior use for the purpose of this motion," id., the Court concluded that since "the City's entitlement to the statutory presumption as to any mark first used since 1995 is at issue," summary judgment as to those marks and classes of merchandise was precluded. Id.

In conclusion, the M&O, inter alia, granted the City's motion for summary judgment on the trademark infringement and false designation of origin claims "as to the NYPD Shield, NYPD Mark, and FDNY Shield as used on merchandise from Class 025/Clothing," denied the trademark infringement and false designation of origin claims as to all other merchandise categories, and

4

denied the Lanham Act dilution claim.³ Id. at 494. Defendants failed to oppose the City's motion for summary judgment on Defendants' counterclaim for cancellation of the trademarks or their defenses. As a result, the counterclaim and defenses were deemed abandoned and dismissed. Id. at 493. A determination of damages was held in abeyance pending resolution of the remaining claims. Id. at 494.

**B. Post-M&O Procedural Activity**

Judge Feuerstein set a trial for March 9, 2020. By letter dated March 5, 2020, the City withdrew its Lanham Act claim for dilution (Count III) as well as its three causes of action under New York law (Counts IV, V, and VI). (See ECF No. 64.) All four counts were dismissed by electronic order dated March 25, 2021.

The City further indicated its belief that withdrawal of the dilution claim eliminated the need for a trial. (See ECF No. 64.) Defendants responded, noting that notwithstanding the withdrawal of four claims, factual issues remained regarding whether Defendants were using the marks on items other than clothing prior to the City's use of the marks on such items. (See ECF No. 69.)

At a conference held before Judge Feuerstein on March 9, 2020, Plaintiff requested permission to file a new motion limited to when the marks were first used, and further requested entry of an injunction barring Defendants from selling unlicensed goods during the pendency of the case. The Court set a briefing schedule on the motion and granted the injunction request. (See Minute Entry, ECF No. 71.) The injunction was entered by order dated March 12, 2020. (See Injunction, ECF No. 73.)

---

³ The Court denied summary judgment on the dilution claim because there was no evidence in the record "regarding when the marks became famous and without such evidence, it is impossible to determine whether Defendants' use of a mark predated its fame." Blue Rage I, 435 F. Supp. 3d at 492-93 (emphasis in original).

5

### C. The Current Motion

The City's motion seeks resolution of the issue of whether the presumption of validity of its marks may be overcome by a "prior use" defense. It argues, inter alia, that: (1) Defendants have offered no "hard evidence" to support the defense (Plaintiff's Memorandum of Law in Support ("Pl. Mem."), at 1, ECF No. 83); (2) the City used the marks long before Defendants (id. at 12); and (3) Defendants cannot establish that they acquired trademark rights to the marks and have raised arguments and defenses legally inconsistent with a prior use defense. (Id. at 14-15.) In addition, the City contends that it had the "exclusive and superior right" to expand its use of the marks into "related classes of souvenir goods" (Id. at 2.) The City seeks an award of statutory damages in the total amount of $3,500,000.

Defendants raise the following issues in opposition: (1) the M&O did not specifically find that the Defendants used the marks "as trademarks," and the City admits they were not used as such by Defendants, thus precluding a finding of infringement (Memorandum in Opposition ("Defs' Opp."), at 2, 5, ECF No. 87); (2) Defendants' use of the marks is "functional" (id. at 4-5; (3) Defendants' have a "fair use" defense under 15 U.S.C. § 1115(b)(4) (id. at 6-7); (4) Defendants are not counterfeiters because the City failed to establish that the marks were used "in a manner likely to deceive the public as to origin," and at a minimum, Plaintiff should have provided a survey (id. at 6-7). As to damages, Defendants contend that statutory damages are inappropriate in light of evidence provided by Defendants of business records and the declarations they submitted, (id. at 8-9), and there is no proof of willfulness on Defendants' part. (Id. at 9.)

## II. LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the burden of demonstrating that "no genuine issue of material fact

6

exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). When determining whether any material facts are in dispute, the court "must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . ." Marvel Characters, 310 F.3d at 286 (citations omitted).

The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts" but rather "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (emphasis in original) (internal quotation marks omitted). Mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment. See Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003). Unless the non-moving party produces "significant probative evidence" demonstrating that a factual dispute exists, summary judgment is appropriate. Anderson, 477 U.S. at 249.

### III. DISCUSSION

#### A. Prior Use Defense

The City's motion seeks resolution of the sole remaining issue that defeated its prior motion for summary judgment on a subset of their claims concerning whether the presumption of validity of its marks may be overcome by a prior use defense for those claims.[4] To prevail on a prior use

---

[4] Plaintiff's withdrawal of its dilution claim and state law claims removed any other claims left unresolved by the M&O.

7

defense, "the claimed senior user must demonstrate (1) present rights in the mark, (2) acquired prior to the date of registration, (3) continual use of the mark since that date, and (4) use prior to the registrant on the goods or services that are in issue." Patsy's Italian Rest., Inc. v. Banas, 508 F. Supp. 2d 194, 217 (E.D.N.Y. 2007). In addition to being the first to use the mark, "the type of use a [party asserting prior use] must make is one that is sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." Dual Groupe, LLC v. Gans-Mex LLC, 932 F. Supp. 2d 569, 573–74 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). "A party asserting prior use against a claim of infringement of a registered mark must prove prior use by preponderance of the evidence." Amped & Collection Inc. v. Hinton, No. 18-CV-6094, 2018 WL 5283912, at *5 (S.D.N.Y. Sept. 10, 2018) (citing Lane Capital Mgmt. Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999)).

In opposition to the first summary judgment motion, Defendants attempted to assert a "prior use" defense on the theory that "the Defendants were using such symbols in the same way they are presently from a time before any of the asserted trademark registrations were registered." See Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 8, ECF No. 50. With the exception of three of the marks used on clothing, the Court found no evidence that Plaintiff had commenced using the marks on other classes of merchandise prior to Defendants' asserted uses in 1995, and denied the City's motion for summary judgment on this basis. Plaintiff then filed the instant motion to resolve only the availability of a prior use defense, which was addressed in cursory fashion in the M&O.

Defendants' opposition papers make clear that, in fact, they are not asserting a prior use defense. Instead, Defendants raise various other arguments—some of which the Court has already rejected—and appear to ask the Court to not only deny summary judgment on the outstanding

8

claims for which the M&O denied summary judgment, but revisit the Court's prior determination that Plaintiff is entitled to summary judgment on its claims for trademark infringement of the NYPD Mark, NYPD Shield, and FDNY Shield as used on clothing.

Because Defendants do not, in fact, assert a prior use defense and have abandoned this defense, the Court finds, on that basis alone, Plaintiff is entitled to summary judgment on the issue of prior use. Moreover, while an analysis of the merits of this defense is not even necessary, as explained, Defendants' statements and admissions make clear that they do not have a viable prior use defense.

As an initial matter, Defendants cannot survive summary judgment because they have failed to offer sufficient evidence concerning the time they commenced selling goods from the varying classes of merchandise for which the City has trademarks.[5]

---

[5] The M&O, in a brief discussion, determined that Defendants' assertion that they had been selling essentially the same products since 1995 "barely satisfies their burden of prior use for the purpose of this motion." Blue Rage I, 435 F. Supp. 3d at 487. On the instant motion, which is focused on the prior use issue, Defendants were obliged to come forward with sufficient evidence from which a jury could find that they are entitled to this defense. The declaration from Salvatore Piccolo, on which the M&O relied, states:

> By 1995, my company Buff Stuff Inc., through its predecessors had been selling <u>essentially the same items</u> it presently sells bearing the insignia of, among others, the NYPD and the FDNY, as decoration to identify the New York City Police Department and the Fire Departments of the City of New York so that our customers may purchase items they desire with these symbols to show their support for the uniform services whose symbols we used to decorate our merchandise

(July 9, 2018 Piccolo Decl. ¶ 3 (emphasis added).)

This declaration—which claims that Defendants were selling "essentially the same items" since 1995—is too vague and conclusory to show that Defendants sold specific classes of goods using specific marks prior to 1995. The other evidence referenced in Defendants' papers is also insufficient. While Defendants did submit photographs purportedly taken in the early 1990s, see Piccolo Decl. at ¶¶ 7-9, Exs I-9, those photographs are not relevant to the current motion. To the extent they show clothing with the NYPD Shield, NYPD Mark, and FDNY Shield, summary judgment has already been granted to Plaintiff for all clothing with those marks. Those photos that depict clothing for FDNY divisions are not relevant as the City does not claim that shirts commissioned by fire stations violate its marks. See Blue Rage I, 435 F. Supp. 3d at 480, n.4.

More importantly, irrespective of the timing of any sales by Defendants, Defendants' admissions and legal arguments show that they are neither asserting, nor entitled to, a prior use defense. "Prior use" is a legal term and is not simply who was first to sell an item with a mark. The user must assert ownership of the mark. See Treeline Imports, Inc. v. Vernikov, 239 F. Supp. 3d 542, 557–58 (E.D.N.Y. 2017) (the "standard test of ownership is priority of use" (internal quotation marks and citation omitted)). Defendants affirmatively represent that they have no ownership interest in the marks. (See Defs. Resp. ¶ 5 (admitting that they "do not claim any ownership interest in the marks and logos used by the NYPD and FDNY as trademarks.")) Similarly, they do not suggest that their prior use of the marks was "open and public use of such nature and extent as to create, in the mind of the relevant purchasing public, an association of the designation with the goods and services of the party claiming priority rights in the designation." Vantone Grp. Ltd. Liab. Co . v. Yangpu NGT Indus. Co., No. 13-CV-7639, 2016 WL 4098564, at *5 (S.D.N.Y. July 28, 2016) (internal quotation marks and citation omitted). To the contrary, they admit that they "[d]o not use marks associated with the NYPD and FDNY as trademarks to designate the origin of any goods of their own making bearing such marks" (Defs. Resp. ¶ 6), and state that they "do not in any way use any symbol of the FDNY or NYPD as a brand, or as a trademark to indicate source or sponsorship of 'unlicensed' products." (Id. ¶ 20.)

As Defendants have no prior use defense, the Court finds that the presumption of validity of the registration of the marks in all classes of merchandise has not been rebutted.[6] Likelihood of consumer confusion exists for the same reasons as set forth in the M&O and need not be repeated or deviated from here. See Blue Rage I, 435 F. Supp. 3d at 488-90 (concluding that "[u]se of the

---

[6] Given this determination, the Court need not consider the City's argument that it had a "right to continue to expand" its use of the marks on clothing to related goods.

10

City's marks creates confusion by suggesting that Defendants' products are affiliated with, sponsored by, or otherwise connected to the City by way of the NYPD and/or FDNY").

### B. Defendants' Additional Arguments

Having abandoned their claim to a prior use defense, Defendants now raise a new argument that they did not advance in opposing Plaintiff's first motion for summary judgment and also seek to relitigate other arguments that the Court previously rejected in the M&O.

Defendants contend that since they did not use the marks "as trademarks," they are insulated from liability for trademark infringement. They argue that their use of the marks was not a "trademark use" and any use by them was permitted as a functional use. To the extent Defendants are attempting to raise a "fair use" defense, that argument is rejected. Defendants' Amended Answer raised only a defense of continued use under 15 U.S.C. §1115(b)(5). Even assuming Defendants had properly raised a fair use defense, they do not prevail. A fair use defense is available to a defendant who establishes, as relevant here, that:

> the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, …. of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party ....

15 U.S.C. § 1115(b)(4). "Assessment of this defense thus requires analysis of whether a given use was '(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.'" JA Apparel Corp. v. Abboud, 568 F.3d 390, 400 (2d Cir. 2009) (quoting EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 64 (2d Cir.2000)). The focus is upon the "actual or proposed uses themselves." JA Apparel, 568 F.3d at 400. Defendants have failed to establish the first element of the defense.

The Second Circuit has "equated use ... as a mark with the use of [a] term as a symbol to attract public attention." JA Apparel, 568 F.3d at 401 (alterations in original; internal quotation

11

marks and citation omitted). Here, Defendants not only used the so-called terms to attract attention to their goods, but affirmatively represent that the presence of the marks is the driving motivation for a consumer's purchase of their goods. (See Defs. 56.1 ¶ 17 (use of the FDNY and NYPD marks "is precisely why Defendants' customers would purchase Defendants' products.")). Review of the evidence shows that Defendants' actual uses of the marks were not descriptive, but rather they appropriated the marks to generate sales of unlicensed items. Defendants have not cited any precedent in which a defendant's use of counterfeit marks was deemed a fair use. The Court finds that Defendants' attempt to assert a fair use defense fails.

Defendants' remaining arguments do not pertain to the prior use issue, but rather challenge findings from the M&O on other points. They revisit their previous arguments that their use of the marks is functional and contest the M&O's determination that they used counterfeit marks. These arguments are beyond the scope of this motion and should have been raised as a motion for reconsideration of the M&O, the time for which has long passed. Moreover, these arguments are meritless.

Because Plaintiff is entitled to summary judgment on the prior use defense left open by the M&O and the other arguments advanced by Defendants all fail, the Court grants Plaintiff summary judgment on its claims concerning the NYPD Mark, NYPD Shield, FDNY Mark, and FDNY Shield marks for the specific classes of goods set forth in the section below.

### C. Violations by Class of Merchandise

The City seeks damages for thirty-five (35) violations, one for each of the four marks in each class of goods for which that mark is registered – seven classes for the NYPD Mark, seven

classes for the NYPD Shield, eleven classes for the FDNY Mark, and ten classes for the FDNY Shield. The claimed violation are broken down by class of merchandise[7] as follows:

| Class of merchandise | Marks registered |
| --- | --- |
| 006/Metal goods | NYPD Mark; NYPD Shield; FDNY Mark; FDNY Shield |
| 009/Scientific goods | NYPD Mark; NYPD Shield; FDNY Mark; FDNY Shield |
| 014/Jewelry | NYPD Mark; NYPD Shield; FDNY Mark; FDNY Shield |
| 016/Decals | FDNY Mark; FDNY Shield |
| 018/Bags | FDNY Mark; FDNY Shield |
| 020 /Misc. | NYPD Mark; NYPD Shield; FDNY Mark; FDNY Shield |
| 021/Housewares | NYPD Mark; NYPD Shield; FDNY Mark; FDNY Shield |
| 024/Blanket throws | FDNY Mark |
| 025/Clothing | NYPD Mark; NYPD Shield; FDNY Mark; FDNY Shield |
| 026/Cloth patches | FDNY Mark; FDNY Shield |
| 028/Toys | NYPD Mark; NYPD Shield; FDNY Mark; FDNY Shield |

Defendants deny having sold goods in all classes of merchandise alleged by the City. In light of the finding that there was potentially a prior use defense regarding uses of the marks on any merchandise other than clothing, the M&O did not address the evidence of violations from Defendants' use of the marks on products in other classes. This Court now examines the record for evidence of violations of the City's marks in the ten (10) classes other than Class 025/Clothing.

Photographs and supporting affidavits were provided in support of the parties' prior motions for summary judgment. See Declaration of Gerald Singleton in Support of Plaintiff's Motion ("Singleton Decl"), ECF No. 43, and exhibits thereto; Declaration of Salvatore Piccolo in Support of Defendants' Motion for Summary Judgment ("Piccolo Decl."), ECF No. 54, and exhibits thereto. The Singleton Declaration attaches, inter alia[8]: copies of photographs of items

---

[7] A description of the types of items generally included in each class appears in the M&O. See Blue Rage I, 435 F. Supp. 3d at 478.

[8] Singleton also attaches a report from an inspection of the Cop Shop conducted on June 15, 2016, including photographs. See Singleton Decl. Ex. G. The photographs are indistinct, include various types of merchandise, and include some labeling indicating that not all items depicted are infringing. For example, one photo has a label noting that the "majority of shot glasses have NYC & Co. hologram tags" and are thus licensed. While this suggests that some are unlicensed, there is no way to decipher from the report or the photographs which are licensed and which specific marks are on those goods.

purchased at the Cop Shop by some unidentified person that Singleton "recognize[s] to be counterfeit goods," (id. Ex. H); copies of photographs of unlicensed merchandise observed by Singleton on October 2, 2017, (id. Ex. I); and copies of unlicensed merchandise observed by Singleton on October 6, 2017. (Id. Ex. J.) Piccolo testified that all the products depicted in Exhibits H, I, and J were made by Defendants. Singleton Decl. ¶¶ 31-33 (citing Deposition of Salvatore Piccolo). Piccolo's Declaration attaches, inter alia: photographs of various items with Bates stamps "NYC" sold at the Cop Shop which the City claims are infringing, (Piccolo Decl. ¶12,14, Ex. A); and photographs of products sold by Defendants that were discussed at Piccolo's deposition. (Id., Ex. C.)

There is ample evidence of use of each mark on various items of clothing sold by Defendants. (See generally Singleton Decl., Exs. H-J.) Upon review of the photographs, the Court finds support for a determination that Defendants violated the City's marks in some, but not all, of the additional classes of merchandise claimed by Plaintiff. Evidence establishes Defendants' use of the NYPD mark in four classes: Class 006/Metal goods (see Piccolo Decl., NYC 02194 (metal clip), Ex. A); Class 014/Jewelry (see id., NYC 02220 (charm), Ex. A); Class 021/Housewares (see id., NYC 02189, 02190 (mugs), Ex. A); and Class 028/Toys (see Singleton Decl. Ex. J (snowman ornament)). The NYPD Shield was used in three classes: Class 014/Jewelry (see Piccolo Decl. Ex. C (9/11/01 pin); Class 020/Misc. (see Singleton Decl. Exs. I, J (framed drawing, kitchen towels); and Class 021/Housewares (see Piccolo Decl., NYC 02189, 02190, 02195 (mugs), Ex. A). Evidence showed the FDNY Mark in only one additional class, Class 021/Housewares (see Singleton Decl. Ex. J (sign)). The FDNY Shield is evidenced in three classes: Class 014/Jewelry (see Piccolo Decl. Ex. C (9/11/01 pin)); Class 021/Housewares (see Singleton Decl. Ex. I

(shotglasses)); and 028/Toys (see id., Exs. I, J (stuffed toys)). Sorted by class of merchandise, infringing uses are found as follows:

| Class of merchandise | Mark(s) infringed |
|---|---|
| 006/Metal goods | NYPD Mark |
| 014/Jewelry | NYPD Mark; NYPD Shield; FDNY Shield |
| 020 /Misc. | NYPD Shield |
| 021/Housewares | NYPD Mark; NYPD Shield; FDNY Mark; FDNY Shield |
| 025/Clothing | NYPD Mark; NYPD Shield; FDNY Mark; FDNY Shield |
| 028/Toys | NYPD Mark; FDNY Shield |

Having determined liability in Plaintiff's favor for infringement of one or more of the four marks in six classes of merchandise, the Court turns to an assessment of damages.

### D. Damages

Pursuant to section 1117, Plaintiff is entitled to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117 (a). Alternatively, "the plaintiff may elect . . . to recover, instead of actual damages and profits under subsection (a), an award of statutory damages . . ." Id. § 1117 (c). The amount of statutory damages is set at "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just," or, if the court finds that the use of the mark was willful, not more than $2,000,000 per mark per type of goods. Id. "Within these statutory limits courts have considerably broad discretion to balance the punitive, deterrent function of an award against the direction that it not constitute a windfall for prevailing plaintiffs." Louis Vuitton Malletier S.A. v. LY USA, Inc., 472 F. App'x 19, 22 (2d Cir. 2012) (summary order) (internal quotation marks and citation omitted)

The City has elected to pursue statutory damages. Defendants oppose the imposition of statutory relief, arguing that there is sufficient evidence from which a determination of actual damages could be made. Defendants provide no legal rationale or case law suggesting that the

15

existence of evidence of actual damages overrules the City's plain right to pursue statutory damages at its election.  Thus, the Court addresses Plaintiff's request for statutory damages.

In cases such as this that implicate violations of different marks and several different types of merchandise, the Court has "discretion on how to determine the amount of the damages award" and may, for example, "award the statutory maximum without regard to the number of marks or categories of infringing goods" or may "award amounts for each mark infringed and/or each type of infringing product."  Antetokounmpo v. Searcy, No. 20CV5055, 2021 WL 3233417, at *5 (S.D.N.Y. May 20, 2021) (citations omitted), report and recommendation adopted, 2021 WL 3233005 (S.D.N.Y. June 23, 2021).  Plaintiff here seeks an award for each mark infringed in each class of merchandise.  Specifically, Plaintiff seeks enhanced statutory damages in the total amount of $3,500,000, representing thirty-five violations, or $100,000 per violation.  The Court, however, has determined liability in Plaintiff's favor only as to infringement of four marks in a total of six classes of merchandise for a total of fifteen violations, which using Plaintiff's request, would result in a total award of $1,500,000.

By statute, the Court may impose a maximum of $2,000,000 per violation "as the court considers just."  15 U.S.C. § 1117 (c).  Factors considered by the court in determining the amount of statutory damages include:  "the defendant's profits, the plaintiff's lost profits, the defendant's willfulness, the size of the counterfeiting operation, the defendant's efforts to mislead and conceal, and the need to deter the defendant and others."  Philip Morris USA, Inc. v. Jackson, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011).  In setting an amount, "the Court must award statutory damages that both relate to actual damages and constitute an amount sufficient to deter this defendant and others from using counterfeit trademarks in the future."  Coach, Inc. v. McMeins, No. 11 CIV. 3574, 2012 WL 1071269, at *3 (S.D.N.Y. Mar. 9, 2012), report and recommendation

adopted, 2012 WL 1080487 (S.D.N.Y. Mar. 30, 2012) see also Philip Morris USA, 826 F. Supp. 2d at 453 ("Statutory damages under the Lanham Act serve not only to compensate but are also aimed at deterrence of future counterfeiting—both by the bad actor in question and by other potential counterfeiters" (internal quotation marks and citation omitted)).

"To prove willfulness, a plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard or willful blindness." Innovation Ventures, LLC v. Ultimate One Distrib. Corp., 176 F. Supp. 3d 137, 164 (E.D.N.Y. 2016). In the trademark context "willful blindness means that a defendant knew it might be selling infringing goods but nevertheless intentionally shielded itself from discovering the truth." Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc., 507 F. App'x 26, 31 (2d Cir. 2013) (internal quotation marks and citation omitted). The City sent a cease-and-desist letter to Piccolo in 2014,[9] the receipt of which "necessarily puts a defendant on notice that its conduct may constitute infringement." Mun. Credit Union v. Queens Auto Mall, Inc., 126 F. Supp. 3d 290, 295 (E.D.N.Y. 2015); see also Fendi Adele, S.R.L., 507 F. App'x at 31 (finding willfulness where defendant "was clearly on notice that it might be infringing trademarks" upon receiving cease and desist letter). Moreover, Defendants continued to sell clothing bearing the City's marks even after the Court's ruling that such conduct constituted infringement as to three of those marks, necessitating imposition of an injunction. In light of the strength of the marks, actual notice to Defendants, and their decision to continue profiting from the use of the marks, the Court finds Defendants' conduct to be willful.

---

[9] The letter, dated March 4, 2014, was attached to Piccolo's Declaration submitted in support of Defendants' prior motion for summary judgment and expressly describes the four trademarks at issue in this case. See Piccolo Decl., Ex. A.

17

As to profits, the City has offered no evidence of any lost profits it suffered as a result of Defendants' actions. As for Defendants' profits, the financial information in the record of Defendants' sales does not differentiate between the sale of licensed versus unlicensed merchandise, and therefore calculation of the Cop Shop's profit from the sale of unlicensed merchandise is not possible. The overall profitability of the business, however, does inform the discussion of the size of the counterfeiting operation. According to federal income tax summaries provided by Defendants, the Cop Shop had gross profits from 2013 to 2018 as follows: $134,242 in 2013; $160,978 in 2014; $207,006 in 2015; $192,494 in 2016; $246,668 in 2017; and $276,022 in 2018. See Piccolo Decl., Ex. N. Over this time period, the average gross profit at the Cop Shop was $202,902.

Although the evidence supports a finding that Defendants infringed on the City's marks in multiple classes of merchandise, the vast majority of the infringing uses were on clothing. The photographic evidence is overwhelmingly of t-shirts, sweatshirts, caps, and other articles of clothing. The Court finds that a larger award is warranted as to the four marks that were used on clothing. In contrast, the evidence of infringing uses in the other classes of merchandise is de minimis, sometimes consisting of a single infringing product. Considering the totality of the circumstances, including the City's significant interest in deterring future infringing conduct by Defendants and others, the Court awards damages as follows:

- $50,000 for each of the NYPD Mark, NYPD Shield, FDNY Mark, and FDNY Shield for infringing goods in Class 025/Clothing (for a total of $200,000);
- $5,000 for use of the NYPD Mark for infringing goods in Class 006/metal goods;
- $5,000 for each of the NYPD Mark, NYPD Shield, and FDNY Shield for infringing goods in Class 014/Jewelry (for a total of $15,000);
- $5,000 for use of the NYPD Shield for infringing goods in Class 020/Misc.;
- $5,000 for each of the NYPD Mark, NYPD Shield, FDNY Mark, and FDNY Shield for infringing goods in Class 021/Housewares (for a total of $20,000); and

18

- $5,000 for each of the NYPD Mark, NYPD Shield, FDNY Mark, and FDNY Shield for infringing goods in Class 028/Toys (for a total of $20,000).

The total amount of the award, $265,000, is more than the Cop Shop's average annual gross profits in the years 2013 through 2018. Acknowledging that the City sought a larger award and that such an award would be permissible under the statute, the Court finds the award as set forth above is fair and just considering the totality of the circumstances, serving as both compensation and deterrence.[10]

## V. CONCLUSION

For all the foregoing reasons and to the extent indicated, the City's motion for summary judgment, ECF No. 80, is granted in favor of the City on its Lanham Act claims for trademark infringement and false designation of origin, and the City is awarded damages against Defendants in the total amount of $265,000.

**SO ORDERED**.

Dated: Central Islip, New York
September 30, 2021

                                                                  /s/ (JMA)
                                                                 Joan M. Azrack
                                                                 United States District Judge

---

[10] The City has further requested an award of reasonable attorneys' fees available to the prevailing party "in exceptional cases." 15 U.S.C. § 1117 (a). Beyond reciting the legal standards, Plaintiff has not provided specific information that would enable a determination of the propriety of or amount such an award. Accordingly, the request for attorneys' fees is denied without prejudice.